**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN C. McTAGUE,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:12-1407** **(JUDGE MANNION)** |
| **v.** | : | |
| **CAROLYN W. COLVIN,**[1] **Acting Commissioner of** | : | |
| **Social Security** | : | |
| **Defendant** | : | |

## MEMORANDUM

The record in this action has been reviewed pursuant to 42 U.S.C. §§405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, ("Act"). 42 U.S.C. §§401-433, 1381-1383f.

## I.    PROCEDURAL HISTORY.

The plaintiff applied for DIB on January 2, 2009 and for SSI on January

---

[1]On February 14, 2013, Carolyn Colvin became acting Commission of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil procedure, she has been substituted as the defendant.

20, 2009. (Tr. 23). In the applications, he claimed disability starting on September 9, 2008. Both applications were initially denied on July 8, 2009 and the plaintiff requested an administrative hearing. (Id.). The Administrative Law Judge (ALJ) held a hearing on June 28, 2010 and took testimony from the plaintiff and a vocational expert. After the hearing, the ALJ concluded the plaintiff could perform a range of sedentary work including jobs such as bottle packer, assembler, and inspector. The ALJ then concluded the plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 27, 32-33). The Appeals Council denied the plaintiff's request for review, making the ALJ's decision final. See 42 U.S.C. §405(g).

At issue before this court is whether substantial evidence supports the Commissioner's decision that the plaintiff was not disabled because he was capable of performing a limited range of sedentary work prior to the date when his insured status expired for purposes of disability insurance benefits. The plaintiff filed his brief in support of his appeal on December 12, 2012. (Doc. No. 10). The defendant filed a brief in opposition on January 2, 2013, (Doc. No. 11), and plaintiff filed a reply brief on January 9, 2013. (Doc. No.

12). The case is now ripe for the court's decision.

## II.    STANDARD OF REVIEW.

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)*; Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988)*; Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999)*, Johnson*, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [he] lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).


## III.    DISABILITY EVALUATION PROCESS.

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §404.1520. See also *Plummer v. Apfel,* 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether

4

the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See [20 C.F.R. §404.1520](#).

Here, the ALJ proceeded through each step of the sequential evaluation process and concluded that the plaintiff was not disabled within the meaning of the Act. (TR. 26-33). At step one, the ALJ found that the plaintiff has not engaged in substantial gainful work activity at any time during the period from his alleged onset date of September 9, 2009 through his decision. (Tr. 26). At step two, the ALJ concluded that the plaintiff's impairments (major depressive disorder, anxiety, left knee internal derangement, and situational depression) were severe within the meaning of the Regulations. (TR. 26). At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Subpart P, Appendix 1, Regulations No. 4. [(20 C.F.R. §404.1520(d)](#), §404.1520(d) and §416.920(d)). (TR. 26).

The ALJ found that the plaintiff has the residual functional capacity ("RFC"), to perform a range of sedentary work. (TR. 27). At step four, the ALJ found that through the date of decision, the plaintiff was unable to perform his past relevant work. (Tr. 32). At step five, the ALJ concluded that considering

the plaintiff's residual functional capacity, age, education and work experience, there were significant jobs in the national economy that the plaintiff could perform. (TR. 32).

The ALJ therefore concluded that the plaintiff had not been under a disability, as defined in the Act, at any time from September 9, 2008, the alleged onset date, through the date of his decision. 20 C.F.R. §§404.1520(g) and 216.920(g). (TR. 33).


## IV.    BACKGROUND

The plaintiff was 49 and one-half years old when the ALJ issued his decision. (Tr. 131). He has a 9th grade education and worked consistently for the Martz bus company from April 1988 until June 2005, when he alleges he became disabled. (Tr. 32, 208). The record is clear that the plaintiff cannot continue his past work due to his limitations. The plaintiff testified to daily panic attacks that require him to take Xanax and wait for up to a half hour for it to take effect. (Tr. 62-63). During the hearing, the plaintiff claimed he could only sit or stand for up to a half hour at a time, (Tr. 60), had stabbing pains in his left knee that were an eight on a scale of ten in terms of severity, (Tr. 55), he could only lift one pound at most, (Tr. 59), and suffered from depression

and daily panic attacks. (Tr. 61-62).

The plaintiff's knee ailments started when he suffered a work-related knee injury in 2004. He subsequently underwent two knee surgeries in June 2005 and June 2006. He has been in physical therapy, but still complains of left knee pain, swelling, and instability. (Tr. 27).

The patient was treated by Dr. Thomas Meade, M.D., his treating orthopedic surgeon. (Tr. 271). Dr. Meade diagnosed the plaintiff in August 2008 with patello femoral athrosis status post-work related injury and arthoscopy; arthofibrosis; quad atrophy; antalgic gait; and neurogenic pain. (Tr. 272). The doctor recommended use of anti-inflammatory medicine, change in diet, and some joint exercises. (Id.). In February 2009, Dr. Meade again saw the plaintiff and made a similar diagnosis, but also noted the plaintiff had no muscle pain, no muscle weakness, no joint pain, and no back pain. (Tr. 347). Dr. Meade has consistently concluded that the plaintiff would be unable to work in his current condition, including an April 16, 2010 follow-up. (Tr. 263, 718-719, 721). However, in that same report, the doctor notes the plaintiff is complaining of pain in his knee, but his report notes, again, no pain in muscle, joint, or back pain. (Tr. 722). The examination of the plaintiff's lower body revealed he had full range of active and passive motion of the

hips, knees, and ankles. He further noted that the plaintiff's hip and knee flexion and extension strength were both 5/5. (Tr. 723).

Dr. Kimberly Kovalick, M.D., the plaintiff's treating physician, has been seeing the plaintiff every few months since April 2005. She completed a multiple impairment questionnaire on November 10, 2009. (Tr. 693). In that questionnaire, she noted the plaintiff could sit for between four and six hours per day and could stand or walk for up to four hours per day. (Tr. 695). The plaintiff could also frequently lift and carry up to 10 pounds and occasionally lift and carry up to 20 pounds. (Tr. 696). He also had tenderness in his back and pain in his knee. (Tr. 693). She also concluded the plaintiff could not push, pull, kneel, bend, or stoop and should not be put in a competitive work environment. (Tr. 695-699).

Dr. Scott Prince, D.O., consulted on the case and concluded the plaintiff could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally. (Tr. 498). He could also stand for up to 2 hours and could sit for an unlimited period of time. (Id.). Dr. Prince's evaluation also shows the plaintiff had nearly full range of motion in his left knee, (Tr. 500), partial lumbar flexion-extension, full lumbar lateral flexion, and full ankle flexion. (Tr. 501). Finally, state physician Dr. Susan Kintz concluded that the plaintiff could

frequently stoop, lift up to 20 pounds, stand for up to six hours, and sit for about 6 hours. (Tr. 513-14).

In January 2009, the plaintiff was diagnosed with "having a major depressive disorder of a single episode and his global assessment functioning was rated as 51." (Tr. 471). After beginning treatment and taking medication, the plaintiff reported in November and December 2009, they were helping and he was not suffering from any side effects. (Tr. 645, 712). In June 2010 the patient continued to show improvement, denied having racing thoughts, something he reported prior, and said that he "was doing well." (Tr. 738).

## V.    DISCUSSION

A. The ALJ properly applied the GRID regulations to the plaintiff's age and specific physical limitations

The plaintiff first contents that the ALJ misapplied the GRID age by failing to engage in a borderline age analysis. (Doc. No. 10). The relevant regulation reads:

> We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will

consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 CFR §404.1563(b). The plaintiff argues that the ALJ should have applied the standard for a person closely approaching advanced age (50-54 years old). 20 CFR §404.1563(d). There is no "authority extending the benefits of a 'borderline' age determination to persons like [the plaintiff] who are within five (5) or (6) months of their fiftieth birthday." *Roberts v. Barnhart*, 139 F. App'x 418, 420 (3d Cir. 2005). "The ALJ is obligated to apply the age categories loosely in a borderline situation, and to make a determination based on all the factors in a given case." *Palmer v. Astrue*, 2010 WL 1254266, *5 (E.D. Pa. March 31, 2010) (citing 20 C.F.R. §§404.1563, 416.963).

At the time of the ALJ's determination, the plaintiff was six months and eleven days from turning fifty. (Tr. 32; Doc. No. 10). The ALJ noted that the guidelines directed him to make a finding of "not disabled;" however, the ALJ further made inquiry with the vocational expert as to "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience and residual function capacity." (Tr. 33). The ALJ specifically asked the vocational expert four hypothetical questions that included the

plaintiff's specific ailments and limitations. (Tr. 70-72). Even taking these restrictions into account, the vocational expert identified a range of occupations that would be appropriate for the plaintiff. (Id.).

The parties point the court to various District Court and Third Circuit cases that have touched on the issue of "borderline" age situations. *See Roberts,* 139 F. App'x at 419 (holding plaintiff that was five or six months from higher age category did not require borderline age analysis); *Morealli v Astrue,* 2010 WL 654396, *9 (W.D.Pa. Feb. 23, 2010) (ALJ erred in not considering plaintiff's borderline situation when plaintiff was five and one-half months from a higher age classification); *Istik v. Astrue,* 2009 WL 382503, *4-5 (W.D.Pa. Feb. 13, 2009) (ALJ erred in not considering borderline age situation when plaintiff was seven months shy of turning fifty-five). However, given the plaintiff is not within six months of the approaching advanced age category, the ALJ properly considered his specific limitations in his decision. "[T]he unrefuted evidence provided by the vocational expert, supports the ALJ's conclusion that [the plaintiff]'s age was not a factor significantly limiting [his] vocational adaptability." *Roberts*, 139 F. App'x at 420. There was no error in not applying the actual age category in this case as the ALJ made his decision based on the plaintiff's *specific limitations and restrictions*.

B. The ALJ properly evaluated the opinions of the plaintiff's treating physicians.

The plaintiff argues that the ALJ failed to accord the appropriate weight to the opinions of his treating orthopedist and physician. He specifically contends the ALJ erred in giving little weight to Dr. Meade's findings about the plaintiff's ability to work and no weight to Dr. Kovalick's and Dr. Prince's evaluations that concluded the plaintiff could never stoop. (Do. No. 10; Tr. 499, 699). The plaintiff further argues that omitting the stooping limitation from the hypothetical posed to the vocational expert constitutes error.

The Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a treating physician in the case of *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000). The Court stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer* [v. *Apfel*, 186 F.3d 422, 429 (3d Cir.1999)] (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)); see also *Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir.1994); *Jones*, 954 F.2d at 128; *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir.1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Brewster*, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v.*

*Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. See *Adorno*, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

*Id.* at 317-318.

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R. §416.927(d)(2). When the opinion of a treating physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered. The Regulations state:

Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source.

20 C.F.R. §416.927(d)(2)(I).

13

Additionally, the nature and extent of the treatment relationship is considered. The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. §416.927(d)(2)(ii).

The ALJ weighed the opinion of Dr. Meade, as well as the relevant objective medical evidence, and concluded that the plaintiff was not completely disabled. *See Corly v. Barnhart*, 102 Fed. App'x 752 (3d Cir. 2004); *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1999) (holding that a statement by a treating physician deeming a plaintiff "disabled" or "unable to work" is not dispositive. An ALJ must review all the medical findings and other evidence and weigh it against the opinion of the treating physician). The ALJ determined that Dr. Meade's opinion that the plaintiff is incapable of gainful employment

due to his "knee pain, inability to ambulate or sit for a prolonged period of time without severe knee pain and neurogenic pain," (Tr. 263), was not supported by the objective medical record or the doctor's own examination. (Tr. 28).

The ALJ referenced Dr. Meade's own findings in rejecting his disability opinion. (Tr. 28). The ALJ reviewed Dr. Meade's notes from his April 16, 2010 exam of the plaintiff, which noted the plaintiff "reports no muscle aches, no muscle weaknesses, no arthralgias/joint pain, and no back pain." (Tr. 722). The examination of the plaintiff's lower body revealed he had full range of motion and strength in his hips, knees, and ankles. (Tr. 723). In light of the conclusory nature of his opinion and the objective medical evidence in both Dr. Meade's and other reports, including Dr. Kovalick's, Dr. Prince's, and Dr. Kintz's diagnoses about plaintiff's ability to carry weight and sit/stand at various intervals, the ALJ properly discredited his opinion about plaintiff's disabled status.

The ALJ also concluded that Dr. Kovalick and Dr. Prince incorrectly opined the plaintiff could never stoop. (Tr. 29). The ALJ did not credit either stooping opinion as he determined they were not based on the objective medical evidence or the doctors' own examination. In fact, Dr. Kovalick's examination demonstrated the plaintiff could engage in limited work that

included lifting light objects, standing and walking for many hours, and sitting for prolonged periods of time. (Tr. 695-96). As such activity is linked to having some ability to lift and carry significant weight, it was properly discredited by the record.

The ALJ further discussed Dr. Prince's report, giving weight to his determinations about the plaintiff's ability to perform sedentary work, but rejecting his conclusions regarding his inability to stoop or climb. (Tr. 28-29). The ALJ concluded the opinion about stooping was undermined by the conclusions about the plaintiff's abilities, including carrying up to 20 pounds, and was therefore inconsistent with the substantial evidence of record. (Tr. 28-29). Finally, Dr. Kintz agreed on the lifting and carrying 20 pounds, but said the plaintiff would be able to stoop, directly contradicting the other opinions. (Tr. 513-14). In sum, there was substantial medical evidence contained in the record to support the ALJ's rejection of Dr. Meade's disability conclusion, as well as Dr. Kovalick's and Dr. Prince's stooping limitation. The ALJ did not err in rejecting these unsupported and contradicted opinions.

C. The ALJ properly evaluated the credibility of the plaintiff

The plaintiff lastly contends that the ALJ improperly discredited his testimony through observations at the hearing and that he improperly

16

evaluated the plaintiff's testimony about his mental impairments. (Doc. No. 10).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir.1997); see also *Casias v. Secretary of Health & Human Servs*., 933 F.2d 799, 801 (10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." *Frazier v. Apfel*, 2000 WL 288246 (E.D. Pa. March 7, 2000)."The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Com. of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999). An ALJ may find testimony to be not credible, but he must "give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." *Id.*

The ALJ credited the plaintiff's testimony about his general symptoms, but discounted the plaintiff's claims about the "intensity, duration, and limiting of effects" of those same symptoms. (Tr. 31). The plaintiff claimed much more severe symptoms when on the stand: sitting or standing for only a half hour,

stabbing pains, lifting one pound, and daily panic attacks. (Tr. 55, 59, 60-62).The ALJ pointed to the physical exam findings within the record and the plaintiff's own admissions contained within the medical records in not finding his testimony credibly. (Id.).

As discussed above, the record is replete with evidence that contradicts the plaintiff's testimony. Three doctors opined he could carry up to ten pounds frequently and twenty pounds on occasion. (Tr. 498, 513, 696). Three doctors opined he could stand for anywhere between two to four hours and could sit for between five hours or without limitation. (Tr. 498, 513, 695). During his February 2, 2009 physical therapy, the plaintiff noted his pain was four out of ten and was decreasing with the use of muscle relaxers. (Tr. 393). Also, his treating physician, Dr. Kovalick, stated that he had "moderate" pain at a four to six on a scale to ten. (Tr. 695). Even though she noted his back pain during the November 11, 2009 exam, (Tr. 693), she also cleared him to lift and carry up to twenty pounds. (Tr. 696). During his April 16, 2010 interview with Dr. Meade, the plaintiff reported no back or muscle pain. (Tr. 722). In sum, the ALJ properly concluded that the testimony and substantial evidence of the record support his finding that the plaintiff's physical symptoms were credibly reported, but that the plaintiff's description of the duration, intensity, and

frequency were not supported by substantial evidence in the record.

The plaintiff also contends the ALJ failed to address his "strong and consistent work record [as] an important factor in assessing credibility as to pain and inability to work." *Preble v. Astrue*, 2009 WL 473750, \*15 (M.D.Pa. Feb. 25, 2009). The plaintiff does have a strong work history, having been employed by the same employer as a bus mechanic for over 17 years. (Tr. 172). However, as the Third Circuit held in *Doborowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979), "[t]estimony of subjective pain and inability to perform even light work entitled to great weight, particularly when, as here, *it is supported by competent medical evidence.*" (emphasis added). The plaintiff's subjective testimony about his pain and inability to work is not supported by any of the objective medical evidence in the record. In fact, every medical report contradicts the plaintiff's testimony in most respects. As such, the ALJ's failure to include the plaintiff's strong work history in his credibility determination was not error.

Finally, the plaintiff contends that the ALJ improperly did not credit his subjective testimony about his depression and anxiety. (Doc. No. 10). The plaintiff points this court to *Eberhart v. Massanari*, 172 F.Supp.2d 589, 597 (M.D.Pa. 2001), arguing that "ALJ apparently scoured the record to find every

possible means to discredit the plaintiff, and make it appear that h[is] disability left h[im] with a residual ability to perform work." However, unlike that case, "[c]orroborating medical evidence [supported the] ALJ's finding that a claimant lacks disabling" mental impairments. *Id.*

The plaintiff testified to daily panic attacks that require him to take Xanax and wait for up to a half hour for it to take effect. (Tr. 62-63). The ALJ noted that the plaintiff was diagnosed with "having a major depressive disorder of a single episode and his global assessment functioning was rated as 51." (Tr. 30). According to the DSM-IV Manuel, this rating shows the plaintiff has moderate difficulty with social and occupational functioning. (Id.). In late 2009 the plaintiff reported an improved condition, as his medications were helping and he was not suffering from any side effects. (Tr. 645, 712). He also denied having racing thoughts, something he reported prior, and said that he "was doing well." (Tr. 738). Moreover, Dr. Meade wrote that although the plaintiff was being treated for depression, he noted no depression and had "a positive mood with appropriate affect." (Tr. 722-23). Taken together, these medical reports indicate the plaintiff was showing consistent improvement and was tolerating his medications well. This objective medical evidence stands in stark contrast to the daily debilitating panic attacks reported at the hearing. There

is nothing in the record that corroborates the plaintiff's claims that his mental condition, after months of improvement, somehow became worse than ever. As such, the ALJ did not err in giving little weight to the plaintiff's testimony in light of the competent medical evidence.

## VI. CONCLUSION

For the reasons stated above, the plaintiff's appeal from the decision of the Commissioner of Social Security, (Doc. No. 1), is **DENIED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 31, 2013**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-1407-01.hhs.wpd